## APPEAL FROM ALLOWANCE OF A CLAIM WHICH WAS EQUIVALENT TO A REJECTION.

Common Pleas Court of Knox County.

GUY R. HOGLE v. THE INDUSTRIAL COMMISSION OF OHIO.

Decided, April, 1921.

*Workmen's Compensation—Right of Appeal from an Award Which is Equivalent to a Rejection—Closing a Case by the Commission Constitutes a Final Order—Commission Without Authority to Pay for a Surgical Operation to Relieve Trouble Due to Natural Causes.*

1. An appeal will lie from an order of the Industrial Commission under Section 1465-90 of the General Code, which in form purports to be an award from the state insurance fund for personal injuries, but which in fact amounts to a denial of claimant's right to participate at all in such fund on grounds going to the basis of his claim. *Police* v. *Industrial Commission*, 23 O. C. C. (N.S.), 433 cited and followed.

2. Where the records of the industrial commission show that the claim was referred to the medical department, and afterward to the legal department of the commission, and each of these departments after reviewing the evidence reported adversely to the allowance of compensation on grounds going to the basis of the claim, and the commission thereafter in considering the claim upon its merits with the evidence and these adverse reports before it makes an order purporting to be an award in which it directs payment of the physicians for making examinations of claimant, but makes no award as compensation to the injured workman, and at the close of such order declares "and this case was closed," such action by the commission is tantamount to a rejection of the claim. In effect it is a denial of claimant's right to participate at all in such fund on grounds going to the basis of claimant's right. Such order is a "final action" within the meaning of Section 1465-90 of the General Code.

3. Where on appeal from such decision, the commission files an answer alleging that by its said order it made an award to claimant relying on such alleged "award" to defeat the appeal, and goes to trial upon such issue, it can not thereafter be heard to deny that it had made a "final order" respecting such claim.

4. Where a loss of vision bears no relation to the injury complained of, but is the result of natural causes, it is unlawful for the Commission to pay for a surgical operation from such insurance fund in an effort to restore the lost vision, and the commission is without authority to compel the injured workman to submit to such an operation.

*Ewalt & Blair,* attorneys for plaintiff.

*John G. Price* Attorney General, and *R. P. Zumehly,* attorneys for defendant.

BLAIR, J.

This case was submitted to the court upon the motion of defendant for a judgment notwithstanding the verdict, and upon a motion to set aside the verdict of the jury, and to grant a new trial—the jury having returned a verdict or finding in favor of the plaintiff, assessing the amount due him at twelve dollars per week, for a period of one hundred weeks, in all twelve hundred dollars.

In substance, the plaintiff alleges in his petition that on the 3d day of June, 1919, while engaged in the regular course of his employment as a laborer in the plant of the Mt. Vernon Bridge Company, in this city, he was injured by being struck in the left eye by an iron crowbar with which he was working, and that as a result of such injury the sight of his eye was destroyed; that subsequently he filed his claim for compensation for such injury under the Workman's Compensation Law with the Industrial Commission of Ohio which claim was rejected by said Industrial Commission, the suit being brought in this court by way of appeal from the decision of the Industrial Commission.

To this petition the Industrial Commission files an answer, setting up two separate defenses, the first defense being in the nature of a general denial, in which many allegations of the petition are admitted, while others are denied. In a second defense the Industrial Commission, after making numerous admissions, makes the following allegation: "and thereafter the Industrial Commission, on or about the twenty-ninth day of April, 1920, heard and considered this application, together with the evidence in connection therewith, and found and determined that the said plaintiff sustained an injury, in the course of his employment, at the time and in the manner alleged in the application, and that the employer was at the time of the injury a subscriber to the state insurance fund, that said injury was not purposely self inflicted, and that prior to the time of filing his claim with this defendant the applicant had not commenced a civil action against his employer on ac-

count of said injujry.  Defendant further alleges that on said date it made an award to the claimant, and ordered and directed that warrants be issued on the state insurance fund for the purpose of paying the same, and that said payments be made as authorized by this plaintiff.  Defendant further alleges that on or about the twenty-ninth day of April, 1920, the said Industrial Commission did issue warrants for the payment of money from the state insurance fund on account of the injuries received by the plaintiff on the third day of June, 1919, and delivered them in accordance with the instructions of plaintiff.  Wherefore defendant prays that the petition and appeal filed herein be dismissed," etc.

In other words, in this second defense the Industrial Commission denies the right of plaintiff to appeal to this court, because it claims it did not deny his right to participate in such insurance fund.  It alleges that by its order of April 29, 1920, it made an award to plaintiff on account of his said injuries, and that its action in this respect is final, and from which no appeal can be had, under Section 1465-90 of the General Code.

That portion of Section 1465-90, General Code, which relates to the right of appeal, reads as follows:

"The board shall have full power and authority to hear and determine all questions within its jurisdiction, and its decision thereon shall be final.  Provided, however, in case the final action of such board denies the right of the claimant to participate at all in such fund upon any ground going to the basis of the claimant's right, then the claimant within thirty (30) days after the notice of the final action of such board, by filing his appeal in the common pleas court of the county wherein the injury was inflicted, be entitled to a trial in the ordinary way, and be entitled to a jury," etc.

It will be seen from a reading of the above section that no appeal will lie from the action of the commission, except in cases where it by its action denies the right of the claimant to participate at all in such fund upon some ground going to the basis of claimant's right.

On the trial of this case to a jury, the trial court held that the order of the commission of April 29, 1920, was tantamount to a rejection of plaintiff's claim—that such an order amounted to a denial of the right of plaintiff to participate at

all in such fund, upon grounds going to the basis of plaintiff's right—and submitted the case to the jury upon the issues raised by the first defense (or the general denial), and this action of the court is the principal error urged in support of these motions.

To get the full import of the order of the commission of April 29, 1920, it is necessary to consider the reports and recommendations of the various "divisions" or departments of the commission, upon which it acted in making this order. Dr. T. R. Fletcher, "Chief of the Medical Division" of the commission, to whom the matter had been refered, filed a report showing that plaintiff had been examined by Dr. Brown, in which he quotes Dr. Brown as saying that the loss of plaintiff's eyesight "is not related to the injury." Then this Chief of the Medical Division adds the following conclusion and recommendation:

"Replying on Dr. Brown's report we do not feel that the claim should be approved from a medical standpoint. Recommendation: Payment of account as rendered by Dr. Brown in the amount of $10.

"T. R. Fletcher,
"Chief Medical Division."

This report of Dr. Fletcher bears date of April 15, 1920. Twelve days later, on April 27, 1920, Mr. C. J. Wardslow, of the "Legal Division" of the Industrial Commission, to whom the matter had been referred, made a report to the commission in which he reviews the claim of plaintiff, quoting from Dr. Fletcher's report, and making recommendations. I quote the following from Mr. Wardlow's report:

"Dr. Brown's report clearly indicates that the condition of both eyes is due to cataracts of idiopathic or natural origin. * * * Conculsion: The evidence fails to show that the loss of vision is due to the injury described. Recommendation: That Dr. Ferree's bill be ordered paid, and that Dr. Brown's bill for special examination be also paid."

Two days later the commission makes its order of April 29, which it claims was an award to plaintiff on account of his injury. This order is as follows:

"On this day the above claim, together with the proof on

file was presented to the commission, considered, and a finding of facts was made, as follows: That the applicant's injury was sustained in the course of employment, and at the time and in the manner alleged in the application: That applicant's employer was at the time of injury a subscriber to the State Insurance Fund: That said injury was not purposely self inflicted: That prior to the filing of his claim with the commission applicant had not begun a civil action against his employer on account of said injury: That the compensation and award allowed and ordered disbursed and paid from the State Insurance Fund is in accordance with the facts and nature and extent of the injury, and such as is authorized by law and the rules of the commission: That applicant has authorized payments to be made to the payee above named.

''The claim was therefore allowed as herein shown, and order and authority granted to the auditor for issuing warrants in payment of the same according to the rules of the commission. Awards for medical, nurse and hospital services and medicines and compensation (1) to be paid at once; and compensation (2) to be paid according to the rules of the commission. And this case was closed.

"This upon motion of Mr —— seconded by Mr. —— and voted upon as follows: Mr. Clark, aye; Mr. Elliott, aye; Mr. Duffy, aye.

"Date, April 29, 1920.

                    "Secretary, Robert L. Hayes."

On the same sheet on which this finding of the commission appears, and above the finding, is a statement signed by H. C. Baker, as director of the claims department of the commission, in which the payment of a ten dollar fee each to Dr. Prout and Dr. Ferree is recommended. In this statement no compensation of any kind is recommended, the spaces opposite the heading "Compensation (1)" and "Compensation (2)" being left entirely blank.

There was no proof of the payment of any of the doctor bills, except the ten dollars to Dr. Brown, and the plaintiff did not in any way assent to or approve such payment; neither did he approve or authorize the payment of any doctor bills or other bills incurred in connection with his claim for compensation.

When this second defense is analyzed, in connection with the proof, it amounts to this, and nothing more: It is contended by the commission that plaintiff has no right of appeal, because in its order of April 29, 1920, it allowed certain physicians'

bills for examining plaintiff. In other words, it claims that inasmuch as these physicians' bills were allowed (although no allowance whatever was made to plaintiff for his injury), plaintiff has not been "denied the right to participate in such insurance fund," and therefore has not the right of appeal. This defense is a denial of the jurisdiction of this court to entertain the appeal.

Evidently the commission, in making this defense, overlooked the decision of the Court of Appeals of Cuyahoga county, in the case of *Police* v. *Industrial Commission*, reported in the 23 O. C. C. (N. S.), 433, the syllabus of which reads as follows:

"An appeal lies from a decision by the Industrial Commission where the award which has been made for a personal injury of a serious character is so small as to indicate that it was intended as a mere gratuity to one not injured in the course of his employment, and therefore not entitled to anything."

In this last cited case the claim was for a serious injury, and the commission, in addition to the physicians' bills had allowed the claimant $3.50 for a truss and $7 as compensation for his injury. Judge Grant, in rendering the opinion, condemns the action of the commission in trying to subvert the law, and thus defeat the right of appeal, and refers to its action as "a purposeful design to beat the law."

If the allowance to Police of a $3.50 truss and $7 as compensation was tantamount to a rejection of his claim for an injury producing double hernia, surely as much can be said of the action of the commission in the instant case, where plaintiff was allowed nothing for the loss of his eyesight, and the only doctor bill in fact paid by the commission was to a doctor in the employ of the commission, and who reported adversely to the allowance of plaintiff's claim.

In form the order of April 29 was an allowance, or an award, but in substance it was a complete rejection—a total denial of plaintiff's right "to participate at all in such fund." And I am still of the opinion that I was right in holding the case had been properly appealed to this court.

In an exhaustive brief filed on behalf of the defendant commission in support of these motions, the further claim is now

made that the order of the commission of April 29, 1920, was not a final disposition of the case: that the commission at that time was not in a position to judge the case, and did not pass upon the merits of plaintiff's claim, but retained jurisdiction for the purpose of making whatever other and further orders might be necessary in the future.

This is evidently an afterthought on the part of the commission. It pleaded an award as a bar to the right of appeal, and when that plea fails it changes front, and offers another reason why plaintiff should be denied his right of appeal, and to have his case tried by a jury. Had such a defense as here suggested been pleaded, there would have been no occasion of empaneling a jury to try this case. If in good faith the commission had retained jurisdiction of the case, and meant to consider further the merits of plaintiff's claim, and to further pass upon it, all that was necessary would have been to bring that information to the attention of the court, and further action by the court would have been delayed.

In its answer the commission alleges that "on the 29th day of April, 1920, it heard and considered plaintiff's application, together with the evidence in connection therewith," and further alleges that "on said date it made an award to plaintiff," and directed warrants to issue therefor on the State Insurance Fund, etc. And by referring to the finding and order of the commission of April 29 (a copy of which appears above), it will be noted that the last sentence in said finding and order reads as follows: "And this case was closed."

What further was there for the commission to hear or consider? Dr. Brown, whom the commission had employed to examine plaintiff had reported that the loss of the eye was "not related to the injury." Dr. Fletcher, chief of the medical division, to whom the case had been referred had reported adversely to the allowance of the claim, and Mr. Wardslow, of the legal division to whom the case was thereafter referred, also reported "the evidence fails to show that the loss of vision is due to the injury described," and the commission surely took that view of the case, for here in court before the jury. it stoutly contended that the loss of plaintiff's eyesight bore no relation whatever to the injury, but that such loss of sight

was due entirely to natural causes. The suggestion in defendant's brief that the commission might be willing to pay for an operation in an effort to restore the eyesight is an intimation that the commission will make a law for the occasion all of its own. If the loss of plaintiff's eyesight was caused by the injury complained of, he is entitled to be compensated in the manner prescribed by law—not in the manner prescribed by the commission, to the exclusion of the law. If the loss of the eye was from natural causes, as the commission so stoutly contends, then it is unlawful for the commission to use any portion of the insurance fund either as an award or in experimental surgery. The use of this insurance fund in an experimental operation to restore vision, the loss of which "is not related to the injury," would be a gross misappropriation of such funds, and any effort of the commission to compel this unfortunate workman to submit to such an operation is an assumption of autocratic power not to be tolerated. If the loss of vision "is not related to the injury," then no expert (whether in the employ of the commission or not) should receive payment from this insurance fund for operating upon this subject.

The claim which the commission now makes that its order of April 29, 1920, was not a "final order" (final disposition of the case), I do not think tenable, from any point of view. From a legal standpoint surely it is a final order. It recites a trial or hearing upon the merits of the claim, in which all of the evidence, as well as the reports of the various divisions or departments of the commission to whom the matter had been referred were before it; and after making certain orders pertaining thereto, which the commission claims was an award, it declares, "And this case was closed." If the commission meant to retain the case for further consideration, or for further orders, why was it not "continued," "passed," "adjourned," "postponed," or some term of some kind used to so indicate? Instead, it expressly declares the matter at an end.

Did the commission itself, at the time this appeal was taken, and at the time it filed its answer in this court, consider that the claim was still pending before it? There can be but one answer to this question and that is in the negative. To defeat plaintiff's right of appeal it relied entirely upon an "award"

which it pleaded as a bar to such appeal—an award in form, but in substance a denial *in toto* of plaintiff's right to participate at all in the insurance fund over which it presides.

For what purpose can it be said this claim is still pending before the commission? Does it wish to hear more evidence as to the cause of plaintiff's blindness?—or is it willing to consider further whether such blindness is in any way "related to the injury?" It makes no such suggestion or intimation. On the contrary, its every suggestion indicates that it considers these questions settled—settled against plaintiff; but it suggests a substitute, a possibility of an offer on the part of the commission to pay for an experimental surgical operation— ostensibly to a surgeon of its own selection. There is no authority of law for this position of the commission.

As all arguments in behalf of the commission have been confined to the question of the right of appeal, we will notice but two of the other assigned errors.

I find no evidence to support the charge of "misconduct" on the part of any juror who served on this panel. Neither do I find "the verdict against the manifest weight of the evidence." The evidence was conclusive that plaintiff had suffered a total loss of vision of his left eye, and of the five doctors who testified, four gave it as their opinion that the loss of vision was due to the injury complained of—the blow from the iron bar, while engaged in the course of his employment as a laborer in the plant of the Mt. Vernon Bridge Company, on June 3, 1919. It is therefore apparent that this ground of the motion is not well taken.

An entry may be placed upon the journal of this court in accordance with the above finding, overruling these motions, and approving the award of the jury and rendering judgment thereon for $12 per week for a period of one hundred weeks, in all $1,200, to be paid in the same manner as though such award had been made by the Industrial Commission. All costs in this case, including a reasonable attorney fee to plaintiff's attorneys, will be assessed against the commission. The amount of this attorney fee will be fixed by this court at the time of filing the entry of this judgment, and counsel for the commission are requested to be present in court at that time.